## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| **WILLIAM MICHAEL ROACH; and JULIE G. ROACH,** | Case No. 3:25-CV-491-MOC-DCK |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| v. | **DEMAND FOR JURY TRIAL** |
| **NATIONSTAR MORTGAGE LLC D/B/A RUSHMORE SERVICING F/K/A RUSHMORE LOAN MANAGEMENT SERVICES, LLC; and CARRINGTON MORTGAGE SERVICES, LLC,** | |
| Defendants. | |

Plaintiffs William Michael Roach and Julie G. Roach, through counsel, state as follows for their First Amended Complaint for Damages against Defendants Nationstar Mortgage LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC, and Carrington Mortgage Services, LLC:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs William Michael Roach ("Mr. Roach") and Julie G. Roach (Mrs. "Roach") (collectively, "Plaintiffs" or the "Roaches") are the owners of residential real property, located at and commonly known as 20407 Havenview Road, Cornelius, NC 28031 (the "Home").

2.      Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

3.      Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC ("Rushmore") is a foreign limited liability company formed

under the laws of the State of Delaware that maintains its corporate headquarters at 8950 Cypress Waters Blvd, Coppell, Texas, 75019.

4.    Defendant Carrington Mortgage Services, LLC ("Carrington") is a foreign limited liability company formed under the laws of the State of Delaware that maintains its corporate headquarters at 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806.

5.    Rushmore was the servicer of a note executed by Plaintiffs (the "Note") and of a deed of trust or mortgage on the Home that secures the Note (the "DOT") (collectively, the "Loan").

6.    Rushmore serviced the Loan at all times relevant to the allegations in this Complaint until servicing rights to the Loan transferred to Carrington effective February 3, 2025.

7.    Carrington is the current servicer of the Loan and has serviced the Loan at all times relevant to the allegations in this Complaint since February 3, 2025.

8.    At all times relevant, Rushmore and Carrington (collectively, "Defendants") serviced the Loan on behalf of and at the behest of U.S. Bank, National Association as legal Title Trustee for Truman 2016 SC6 Title Trust ("USBNA"), the owner of the Loan.

9.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).[1]

10.    This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

---

[1] This matter was originally filed in the General Court of Justice Superior Court Division, Mecklenburg County, North Carolina, styled *William Michael Roach v. Nationstar Mortgage LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC; and Carrington Mortgage Services, LLC*, Case No. 25CV023186-590. Carrington filed for the removal of this matter pursuant to 28 U.S.C. § 1441 as this Court has original jurisdiction under 28 U.S.C. § 1331. (Dkt. 1)

11.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

12.     This action is filed, in part, to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

13.     Plaintiffs assert claims for relief against Rushmore for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

14.     Rushmore is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

15.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

16.     The Loan is secured by the Home that is Plaintiffs' principal residence. 12 C.F.R. § 1024.30(c)(2).

17.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

18.     Rushmore is subject to the requirements of RESPA and Regulation X, and Rushmore does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

19.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12

U.S.C. § 2605(k)(1)(C).

20. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

21. Plaintiffs have a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

22. Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

23. Defendants are each a "debt collector" as defined by 15 U.S.C. § 1692a(6) as each began collecting on the Loan when the Loan was past due and in default and as Rushmore otherwise treated the Loan as if it were in default at the time it obtained servicing rights to the same. *See*, *supra*.

24. The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by Rushmore is a residential mortgage the primary purpose of which was for personal, family, or household use, namely to secure the financing of Plaintiff's primary residence.

25. Plaintiff has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k, for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

4

## FACTS AND BACKGROUND

26.     On or about May 23, 2003, Plaintiffs executed the Note in the amount of $461,135.00 along with the DOT on the Home securing the Note with non-party Wachovia Bank. *See* a copy of the Loan documents, attached as **Exhibit 1**.

27.     On or about September 21, 2011, Plaintiffs executed a permanent loan modification agreement (the "Modification"). *See* a copy of the Modification, attached as **Exhibit 2**.

28.     Per the Modification, the "CURRENT TERMS" of the Loan contained a statement that the "Interest Rate" was "5.490% per year" which was modified to 4.875% for the first thirty-six (36) months of the Modification and 5.490% for the remaining term of the Modification.

29.     Mr. Roach filed a voluntary petition for protection under Chapter 13 of the United States Bankruptcy Code on November 28, 2022, identified as Case No. 22-30585 in the United States Bankruptcy Court for the Western Division of North Carolina (the "Bankruptcy")

30.     USBNA filed its proof of claim, Claim 9-1, on February 6, 2023.

31.     Pursuant to the Mortgage Proof of Claim Attachment, up until the payment remitted on or about December 17, 2020, Rushmore and USBNA were applying Plaintiffs' payments as calculated by the daily simple interest method.

32.     Pursuant to the Mortgage Proof of Claim Attachment, as of the payment remitted on or about December 17, 2020, Rushmore and USBNA began applying Plaintiff's payments as calculated as an amortized loan.

33.     Neither the documentation for the Loan nor the documentation for the Modification provide that the Loan is to have payments as calculated by the daily simple interest method. *See* Exhibits 1 and 2.

34.     As payments were incorrectly applied as calculated by the daily simple interest method following the Modification and prior to the payments remitted on or about December 17, 2020, the entirety of such payments were applied to interest on the Loan without any amounts being applied to pay down the principal of the Loan.

35.     As a result of the foregoing, Plaintiffs' payments have failed to reduce the principal balance of the Loan which has caused Plaintiffs' subsequent payments, even though being applied as amortized loan payments, to be applied with a greater amount going to interest than warranted, exacerbating the problem with each payment made.

36.     On or about June 23, 2023, Plaintiffs, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Rushmore (the "NOE") at the address designated by Rushmore for the receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c), respectively (the "Designated Address"). *See* a copy of the NOE and tracking information evidencing delivery of the same, attached as **Exhibit 3**.[2]

37.     Through the NOE, Plaintiffs alleged that Rushmore committed errors, *inter alia*, in imposing "impermissible fees/costs without explanation in violation of the [Loan] and confirmed Chapter 13 Plan" and wrongfully "charged daily simple interest to the loan that is not provided for in the Note." *See* Exhibit 3.

38.     Rushmore received the NOE at the Designated Address.

---

[2] While NOE #1 is dated "June 23, 2021", this is a typographical error and the correspondence was generated and sent on June 23, 2023. This is evidenced by the Bankruptcy Case and the filing date for the same being referenced therein. Had NOE #1 been sent on June 23, 2021, the Bankruptcy Case information would not have been known as it would not have yet been filed.

39.     On or about July 10, 2023, Rushmore sent correspondence to Plaintiffs in response to the NOE (the "Response"). *See* a copy of the Response, without enclosures, attached as **<u>Exhibit 4</u>**.

40.     Through the Response, Rushmore did not admit that any errors occurred as alleged. *See* <u>Exhibit 4</u>.

41.     In relation to the daily simple interest issue, Rushmore stated: "Rushmore's records indicate that the loan was originated as a Home Equity Line of Credit ("HELOC") loan, and the interest rate for this loan is calculated via the daily simple interest method….We have requested a copy of any HELOC agreement that the borrower may have signed in addition to the Negotiable Promissory Note and Deed of Trust, and will forward it to your office upon receipt." *See* <u>Exhibit 4</u>.

42.     Despite relying on the Loan being a daily simple interest HELOC, Rushmore failed to provide  a copy of any such "HELOC agreement" signed by the Plaintiffs in relation to the Loan. *See* <u>Exhibit 4</u>.

43.     Moreover, neither the Loan documents nor the subsequent Modification documents contain *any* terms that would indicate that the Loan is a HELOC or any other type of open-ended credit plan, nor do any such documents provide that the interest rate for this loan is to be calculated via the daily simple interest method.

44.     Upon the transfer of servicing rights to the Loan on or about February 3, 2025, Carrington began to follow in the footsteps of Rushmore and claim inaccurate amounts due and owing for the Loan due to the miscalculated interest.

45.     On or about March 4, 2025, the Bankruptcy was dismissed.

46.     Since obtaining servicing rights to the Loan, Carrington sent various delinquency notices to Plaintiff claiming an improper and inflated amount due and owing including a monthly mortgage statement dated March 11, 2025, claiming an amount due of $210,354.57 and stating: "You are late on your mortgage payments. Failure to bring your loan account current may result in fees and foreclosure – the loss of your home." *See* a copy of this mortgage statement, attached as **Exhibit 5**.

### IMPACT UPON AND DAMAGES SUFFERED BY THE ROACHES

47.     Defendants' mishandling of the Loan has caused Plaintiffs to incur attorneys' fees and costs in, unsuccessful, attempts to correct such errors relating to the Loan.

48.     Defendants' improper actions caused Plaintiffs to suffer from further actual and proximate damages including, but not limited to:

a.  Improper amounts charged to the Loan due to the improper application of payments to the Loan and the collection and attempted collection of such amounts for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled;

b.  Legal fees, costs, and expenses to submit notices of error, including the NOE, to Rushmore in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have Rushmore mitigate the harm caused to Plaintiffs to which he did not receive a proper or adequate response;

c.  Forcing Mr. Roach to file for bankruptcy protection in order to protect the Home against foreclosure proceedings and to protect the substantial equity that Plaintiff has in the Home;

d. Financial distress and hardship to maintain the necessary payments in the Bankruptcy pursuant to the plan therein, prior to the dismissal, including the liquidation of numerous investment assets which have since appreciated in value, which would not have been necessary but for Rushmore's misconduct which has had a negative impact on the lives of Plaintiff and his family;

e. Delay in resolving the delinquency and the lost opportunity to obtain a refinance transaction due to improper amounts being claimed as due and owing;

f. Significant damage to Plaintiffs' credit and a delay in the rehabilitation of their credit which has caused Plaintiffs to be denied for credit on numerous occasions including car loans for their children, to obtain other credit at higher interest rates than they would have otherwise obtained, and deterred them from applying for other credit they would have otherwise sought;   and,

g. Severe emotional distress driven by Defendants' failure to properly handle the Loan and by the justified fear that such blatant indifference would result in the unwarranted foreclosure of the Home and/or the forced payment of unwarranted amounts, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

### COUNT ONE: AGAINST RUSHMORE
### VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)
### (Failure to Conduct a Reasonable Investigation and Properly Respond to the NOE)

49.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 48 in their entirety, as if fully rewritten herein.

50.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower,

9

information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

51. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

52. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

53. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

54. A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

55. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1) within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error. 12 C.F.R. § 1024.35(e)(3)(i)(C).

56. The NOE constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Plaintiff that includes his name, mortgage loan account number, and property address and asserts an error he believed to have occurred. *See* Exhibit 6.

57. On or about June 23, 2023, Plaintiff, through counsel, sent the NOE to Rushmore at the Designated Address. *See* Exhibit 3.

58. Through the NOE, Plaintiffs asserted that Rushmore committed multiple covered errors by imposing "impermissible fees/costs without explanation in violation of the [Loan] and confirmed Chapter 13 Plan" and wrongfully "charged daily simple interest to the loan that is not provided for in the Note." *See* Exhibit 3.

59. Rushmore received the NOE at the Designated Address.

60. On or about July 10, 2023, Rushmore, through counsel, sent the Response to Plaintiffs. *See* Exhibit 4.

61. Rushmore did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through the Response as it did not admit that the errors occurred as alleged in the NOE nor take any corrective action. *See* Exhibits 3 and 4.

62. Rushmore did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through the Response as it is clear that Rushmore did not perform a reasonable investigation into the errors alleged through the NOE.

63. In relation to the daily simple interest issue, Rushmore stated: "Rushmore's records indicate that the loan was originated as a Home Equity Line of Credit ("HELOC") loan, and the interest rate for this loan is calculated via the daily simple interest method…We have requested a copy of any HELOC agreement that the borrower may have signed in addition to the

Negotiable Promissory Note and Deed of Trust, and will forward it to your office upon receipt." *See* Exhibit 4.

64.     Despite relying on the Loan being a daily simple interest HELOC, Rushmore failed to provide a copy of any such "HELOC agreement" signed by the Plaintiffs in relation to the Loan. *See* Exhibit 4.

65.     Moreover, neither the Loan documents nor the Modification documents contain *any* terms that would indicate that the Loan is a HELOC or any other type of open-ended credit, nor do any such documents provide that the interest rate for this loan is to be calculated via the daily simple interest method.

66.     Had Rushmore's investigation been reasonable, it would have been able to ascertain that the Loan was not an open-ended credit plan and that none of the Loan documents or the Modification provided had established the Loan as a HELOC or a daily simple interest loan.

67.     Rushmore failed to properly respond to the NOE in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)(1)(C) and (E)

68.     As a result of Rushmore's actions, Rushmore is liable to Plaintiffs for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

69.     Rushmore's failure to properly respond to the NOE by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOE constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and has caused Plaintiffs to suffer actual damages as detailed, *supra*. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism

makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

70.     Rushmore's actions have caused Plaintiffs' attorneys' fees and postage costs associated with the preparation of the NOE to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see also Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

71.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: AGAINST RUSHMORE
### VIOLATIONS OF THE NC MORTGAGE SERVICING ACT, N.C.G.S 45-90 *et seq.*
### (Failure to Correct Errors and Compensate Plaintiffs)

72.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 71 in their entirety, as if fully rewritten herein.

73.     Rushmore is a "servicer" as defined by the NC Mortgage Servicing Act. N.C.G.S. § 45-90(1).

74.     The Loan is a "home loan" as defined by the NC Mortgage Servicing Act. N.C.G.S. § 45-90(2).

75.     Under the NC Mortgage Servicing Act, "[a]ll fees charged by a servicer must be otherwise permitted under applicable law and the contracts between the parties. Nothing [in the NC Mortgage Servicing Act] is intended to permit the application of payments or method of charging interest which is less protective of the borrower than the contracts between the parties and other applicable law." N.C.G.S. 45-91(4).

76.     To avoid liability under the NC Mortgage Servicing Act, within 30 days of being notified of an error, a servicer must correct the error and compensate the borrower for any fees or charges incurred by the borrower as a result of a violation under the Act. N.C.G.S. 45-94(2).

77.     The NOE constitutes a notice of error as described in the NC Mortgage Servicing Act as it is a written notice from Plaintiffs that includes their names and loan account number and asserts an error they believed to have occurred. *See* Exhibit 6.

78.     On or about June 23, 2023, Plaintiffs, through counsel, sent the NOE to Rushmore at the Designated Address. *See* Exhibit 3.

79.     Through the NOE, Plaintiffs asserted that Rushmore committed multiple covered errors by imposing "impermissible fees/costs without explanation in violation of the [Loan] and confirmed Chapter 13 Plan" and wrongfully "charged daily simple interest to the loan that is not provided for in the Note." *See* Exhibit 3.

80.     Rushmore received the NOE at the Designated Address.

81.     On or about July 10, 2023, Rushmore, through counsel, sent the Response to Plaintiff. *See* Exhibit 4.

82.     Rushmore did not fulfill its obligations as to the NC Mortgage Servicing Act through the Response as it did not take any corrective action or compensate Plaintiff for the unlawful charges. *See* Exhibits 3 and 4.

83.     In relation to the daily simple interest issue, Rushmore stated: "Rushmore's records indicate that the loan was originated as a Home Equity Line of Credit ("HELOC") loan, and the interest rate for this loan is calculated via the daily simple interest method…We have requested a copy of any HELOC agreement that the borrower may have signed in addition to the

Negotiable Promissory Note and Deed of Trust, and will forward it to your office upon receipt." *See* Exhibit 4.

84.     Despite relying on the Loan being a daily simple interest HELOC, Rushmore failed to provide a copy of any such "HELOC agreement" signed by the Plaintiffs in relation to the Loan. *See* Exhibit 4.

85.     Moreover, neither the Loan documents nor the Modification documents contain *any* terms that would indicate that the Loan is a HELOC or any other type of open-ended credit, nor do any such documents provide that the interest rate for this loan is to be calculated via the daily simple interest method.

86.     Rushmore failed to properly respond to the NOE in violation of the NC Mortgage Servicing Act.

87.     As a result of Rushmore's actions, Rushmore is liable to Plaintiffs for actual damages, including reasonable attorneys' fees, as further described, *supra*. N.C.G.S. 45-94.

**COUNT THREE: AGAINST DEFENDANTS**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. §§ 1692, *et seq.*)**

88.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten herein.

89.     Plaintiffs are each a "consumer" as each is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

90.     The Loan is a "debt" as it is an obligation or alleged obligation of Plaintiffs to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of the Home. 15 U.S.C. § 1692a(5).

91. Defendants are each a "debt collector" because each regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as USBNA. 15 U.S.C. § 1692a(6).

92. The Loan was in contractual default at the time Defendants each acquired the servicing rights to the same. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

93. Defendants, through, *inter alia*, mortgage statements and correspondence treated the Loan as if it was in default.

94. The FDCPA prohibits debt collectors from communicating directly with consumers that the debt collector knows are represented by counsel . 15 U.S.C. § 1692c(a).

95. Plaintiffs have advised Carrington on numerous occasions that they are represented by counsel and have provided their counsel's information to Carrington.

96. Despite this, Carrington has continued to contact Plaintiffs directly via telephone claiming to be a representative of Carrington named "Brenda Edwards"[3] in violation of 15 U.S.C. § 1692c(a).

97. The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The FDCPA provides examples of conduct that violate this provision including: The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

98. Defendants violated 15 U.S.C. § 1692f through its actions in applying payments in accordance with calculations based on daily simple interest and by applying subsequent payments, albeit as amortized loan payments, with a greater amount going to interest than

---

[3] Although the representatives of Carrington contacting Plaintiffs are identified as "Brenda Edwards", Plaintiffs have received numerous calls from different individuals each claiming to be "Brenda Edwards".

warranted, exacerbating the problem with each payment made and by collecting and attempting to collect unwarranted amounts as a result.

99.     Defendants' actions have caused Plaintiffs to suffer actual damages, further described, *supra*, including but not limited to requiring Plaintiffs to incur attorneys' fees and costs related to the preparation and mailing of the NOE to attempt to have Rushmore correct its erroneous conduct.

100.     As a result of Rushmore's conduct, Plaintiffs suffered extreme emotional distress driven by the fear that Rushmore's actions would lead to an unwarranted foreclosure of their Home, an inflated plan payment that he struggled to pay to save their home, and/or the forced payment of unwarranted amounts, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

101.     As a result of Rushmore's actions, Defendants are each liable to Plaintiffs for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

102.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

**COUNT FOUR: AGAINST DEFENDANTS**
**VIOLATION OF NORTH CAROLINA DEBT COLLECTION ACT**
**(N.C.G.S. § 75-50, *et seq*.)**

103.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

104.     Plaintiffs are each a "consumer" as defined by N.C.G.S. §75-50 as the Loan is a "debt" as defined by N.C. Gen. Stat. §75-50, incurred to finance the Home for personal, family, and/or household purposes.

105.    Defendants are each a "debt collector" as defined by the N.C.G.S. §75-50 as each engaged in the collection of the "consumer's" "debt", the Loan.

106.    N.C.G.S. §75-54 prohibits debt collectors from, *inter alia*, collecting or attempting to collect debt by any fraudulent, deceptive, or misleading representations.

107.    N.C.G.S. §75-55 prohibits debt collectors from collecting or attempting to collect debt by use of unconscionable means.

108.    Defendants violated N.C.G.S. §§75-54 and 75-55 through their actions in applying payments in accordance with calculations based on daily simple interest and by applying subsequent payments, albeit as amortized loan payments, with a greater amount going to interest than warranted, exacerbating the problem with each payment made, by demanding payment of unauthorized and unwarranted amounts subsequent to such actions, and, in the case of Rushmore, refusing to correct such conduct after being put on notice of the same.

109.    Defendants' actions, including their misrepresentations and omissions, were unfair in that such actions offend public policy, are oppressive and are substantially injurious to consumers, including Plaintiffs.

110.    Defendants' actions were in and affecting commerce.

111.    As a result of Defendants' actions in violation of the NCDCA, Plaintiffs are entitled to recover civil penalties, actual damages and attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs William Michael Roach and Julie G. Roach pray that this Court grant judgment against Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC and award them the following:

A.   Actual damages from Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.   Treble actual damages from Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC in an amount to be determined at trial for the allegations contained in Count Four;

C.   An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC for its violations of RESPA contained in Count One;

D.   An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC for its violations of the FDCPA contained in Count Three;

E.   An award of civil penalties of no less than Five Hundred Dollars ($500.00) and no more than Four Thousand Dollars ($4,000.00) from Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing f/k/a Rushmore Loan Management Services, LLC for its violations of the NCDCA contained in Count Four;

F.   For attorney's fees and costs as to Counts One through Four; and,

G.   For such other relief which this Court may deem appropriate.

**WHEREFORE**, Plaintiffs William Michael Roach and Julie G. Roach pray that this Court grant judgment against Defendant Carrington Mortgage Services, LLC and award them the following:

A.   Actual damages from Defendant Carrington Mortgage Services, LLC  in an amount to be determined at trial for the allegations contained in Counts Three and Four;

B.   Treble actual damages from Defendant Carrington  Mortgage Services, LLC in an amount to be determined at trial for the allegations contained in Count Four;

C.   An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant Carrington  Mortgage Services, LLC for its violations of the FDCPA contained in Count Three;

D.   An award of civil penalties of no less than Five Hundred Dollars ($500.00) and no more than Four Thousand Dollars ($4,000.00) from Defendant Carrington Mortgage Services, LLC for its violations of the NCDCA contained in Count Four;

E.   For attorney's fees and costs as to Counts One through Four; and,

F.   For such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiffs William Michael Roach and Julie G. Roach hereby respectfully demand a trial by jury on all such claims that may be so tried.

Dated: July 30, 2025

By: */s/ Rashad Blossom*
    Rashad Blossom NC Bar #45621
    Blossom Law PLLC
    301 S. McDowell St.
    Suite 1103
    Charlotte, NC 28204
    704-256-7766
    Email: rblossom@blossomlaw.com

Daniel M. Solar (OH #0085632)*
*Motion for pro hac vice anticipated*
DannLaw
15000 Madison Avenue
Cleveland, OH 44107
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiffs William Michael Roach and Julie G. Roach*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk's office using the CM/ECF system and served via the Court's CM/ECF system upon all parties accepting electronic service on this 30th day of July, 2025.

*/s/ Rashad Blossom*
Rashad Blossom
Blossom Law PLLC
*Counsel for Plaintiffs William Michael Roach and Julie G. Roach*